<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ANTHONY TORTORELLA, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.  02-4819 (JAG) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CITY OF ORANGE, et al., | : | |
| | : | |
| Defendants. | : | |

<u>**GREENAWAY, JR., U.S.D.J.**</u>

This matter comes before this Court on the motions for summary judgment, pursuant to FED. R. CIV. P. 56, by Defendants City of Orange ("Orange"), City of Orange Police Department ("OPD"), Director Donald F. Wactor ("Wactor"), Director Edward Lucas ("Lucas"), Captain William Heinzelman ("Heinzelman"), and Captain James Sweigart ("Sweigart") (collectively, "Defendants").  For the reasons set forth below, the motions will be denied in part and granted in part.

## <u>INTRODUCTION</u>

This case arises from the events following the federal prosecution of Orange police officers, <u>United States of America v. Thomas Smith et al.</u>, Crim. No. 2:00-cr-00399, (the Smith Trial), for the death of Earl Faison while Mr. Faison was in OPD's custody.  Anthony Tortorella ("Tortorella" or "Plaintiff") alleges that Defendants retaliated against him for his testimony against the <u>Smith</u> defendants in several ways, including terminating him from his position as an Orange police officer.

On October 4, 2002, Plaintiff filed a seven-count Complaint alleging: 1) multiple acts of retaliation against Plaintiff for his testimony, violating 42 U.S.C. §§ 1983 and 1985, and the First, Fourth, and Fourteenth Amendments to the Constitution; 2) conspiracy to retaliate and deprive Plaintiff of his constitutional rights; 3) wrongful discharge contrary to public policy or common law; 4) intentional or negligent infliction of emotional distress; 5) retaliation against Plaintiff in violation of N.J. Stat. Ann. § 34:19-2, the Conscientious Employee Protection Act ("CEPA"); and 6) a common law claim based on retaliatory discharge.

In response to this motion, Plaintiff voluntarily dismissed:  1) any claims for intentional or negligent infliction of emotional distress; 2) any claims of conspiracy, pursuant to 42 U.S.C. §§ 1983 and 1985 (Counts Two and Five); and 3) any claim alleging wrongful discharge contrary to public policy or common law (Count Four).  Thus, Defendants' motions for summary judgment on Counts Two, Four, and Five are denied as moot.

## FACTUAL BACKGROUND

On April 8, 1999, Orange Police Officer Joyce Carnegie ("Officer Carnegie") was shot and killed by a criminal assailant.  (Compl., ¶ 8).  On April 11, 1999, Earl Faison ("Faison") was arrested by OPD officers.  While in police custody, Faison was assaulted by members of OPD who mistakenly believed that Faison was Officer Carnegie's assailant.  Faison died as a result of his injuries.  Plaintiff and his partner, Officer Keith Jackson ("Jackson"), witnessed the assaults on Faison.  (Compl., ¶¶ 13-21).

The events of April 11, 1999 became the subject of an investigation by the United States Attorney's Office ("USAO") and the Federal Bureau of Investigation ("FBI") (collectively the "Federal Authorities").  The Federal Authorities questioned Officers Tortorella and Jackson

2

about Faison's death.  Officers Tortorella and Jackson initially lied to the Federal Authorities, but eventually testified truthfully against members of OPD.

The trial against the offending OPD officers took place in November and December of 2000.  Officers Tortorella and Jackson, as well as several other OPD officers, testified at the Smith Trial.

Shortly following the Smith Trial, Director Wactor, and investigating officers, Sweigart, and Heinzelman, met with members of the Essex County Prosecutor's Officer to determine what action, if any, OPD should take against those officers who were involved in the Faison incident, but not defendants in the Smith Trial.  (Dep. Tr. of Donald Wactor dated Oct 21, 2005 ("Wactor Dep.") attached as Ex. E to the Certification of John P. Nulty, Jr. ("Nulty Cert."), T68:4 to 70:8 and Memorandum from James Sweigart to the File dated December 14, 2000[1] attached as Ex. P of the Nulty Cert.).[2]  On January 11, 2001, the ECPO began its investigation into criminal conduct of Tortorella and other officers.  (Letter from Assistant Essex County Prosecutor Paul Bradley to Director Donald F. Wactor dated January 11, 2001, attached as Ex. R to the Nulty Cert.).  Based on evidence provided to Plaintiff at that time, the ECPO finished its investigation on September 6, 2001, with a recommendation of no criminal charges.  (Letter from Assistant Essex County Prosecutor Prosper Bellizia to Director Edward Lucas, attached as Ex. V to the Nulty Cert.).[3]

---

[1] It is undisputed that the year 2000 is a typographical error.  (Pl.'s Statement of Undisputed Facts).  The memo should reflect 2001 as the year.

[2] The abbreviation "T" references a specific page and line of a deposition transcript.

[3] In the discovery phase of this trial, the ECPO produced a letter dated May 16, 2006, which appears to end the investigation.  This letter was not produced by OPD to Tortorella

On October 5, 2001, OPD served departmental charges against Tortorella.  (Preliminary Notice of Disciplinary Action against Anthony Tortorella, dated October 2, 2001, attached as Ex. W to the Nulty Cert.).  Tortorella's departmental hearing was held on December 17, 2001.  On May 24, 2002, the departmental hearing officer issued a recommendation of termination. (Opinion of Disciplinary Hearing of Anthony Tortorella, dated May 24, 2002, attached as Ex. 19 of Defs.' Orange and OPD's Summ. J. Br.).  On May 31, 2002, Director Lucas entered a Final Notice of Disciplinary Action terminating Tortorella's employment.  (Pl.'s Statement of Undisputed Facts ¶ 1).  Tortorella appealed and his termination was affirmed by the Office of Administrative Law.  (Opinion of Disciplinary Hearing of Anthony Tortorella, dated February 24, 2004, attached as Ex. 20 of Defs.' Orange and OPD's Summ. J. Br.).

Plaintiff filed this action on October 3, 2002.  Following an administrative stay awaiting the determination of the OAL, this Court reactivated the action on September 8, 2004.  The Defendants filed their various motions for summary judgment in May and June 2006.

## LEGAL STANDARD

I.  **Summary Judgment**

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In considering a motion

during the discovery phase of his administrative hearings.

for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."  In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").  "A

nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

## DISCUSSION

**I.      Defendants' Motions for Summary Judgment**

   A.      Matters of Pleading

Defendants argue, as an initial matter, that Orange and OPD cannot be sued in conjunction with municipalities in a Section 1983 action because the police department is merely an administrative arm of the municipality – not a separate legal entity. Linden v. Spagnola, No. 99-2342, 2002 WL 1625414, at *6 (D.N.J. Jun. 27, 2002). This Court disagrees.

Fed. R. Civ. P. 17(b) states that "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Linden, however, cites to DeBellis v. Kulp, 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001), a case from Pennsylvania, in holding that a police department and municipality are not separate legal entities. The appropriate precedent is New Jersey state law. Defendants do not cite, and this Court did not find, any New Jersey case law or statutory authority dictating that a police department is merely an administrative arm of the

6

municipality.  Further, this Court located a substantial number of New Jersey state court cases in which the municipality and the police department were both sued.  These cases make no mention of a problem in suing both the municipality and the police department.  Defendants' argument fails and summary judgment is denied to Defendant Orange Police Department on this ground.

Defendants also argue that the claims against the Individual Defendants in their official capacity are actually claims against the municipality.  See Kentucky v.Graham, 473 U.S. 159, 166 (1985) (holding that "[o]fficial-capacity suits [] 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 n. 55 (1978))).  This Court agrees, but notes parenthetically that the practical effect of this argument is minimal, considering that the municipality has been pled appropriately as a party and the Individual Defendants have also been sued in their personal capacity.

A.    Counts One and Three: The § 1983 Claims

Plaintiff alleges that Defendants violated his First Amendment rights through acts of retaliation for his testimony against other Orange police officers at the Smith trial.  Specifically, Plaintiff alleges that 1) in August 1999, unnamed defendants placed a wrapped slice of cheese in Plaintiff's mail slot to indicate that Plaintiff was a "rat" (Orange Police Department Incident Report dated August 19, 1999, and attached as Ex. G to the Nulty Cert.); 2) subsequent to a leave of absence due to a knee injury, Plaintiff was transferred to "the shift that all [the Smith defendants'] personal friends are on," (Dep. Tr. of Anthony Tortorella, dated Oct 3, 2005 ("Tortorella Dep.") attached as Ex. B to the Nulty Cert., T68:4 to 70:8, T44:16-19); 3) unnamed defendants mutilated the uniforms of Plaintiff's partner, Officer Keith Jackson ("Jackson"), who

also testified at the Smith Trial (Dep. Tr. of James Sweigart, dated October 6, 2005 ("Sweigart Dep."), attached as Ex. D to the Nulty Cert., T112:1-25); 4) Orange Officer Rainforth, stated that he would not respond to calls for back-up for Jackson; and 5) Plaintiff was terminated.

"Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." Hill v. Borough of Kutztown, 455 F.3d 225, 233 n. 8 (3d Cir. 2006); (quoting Shuman ex rel. Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 146 (3d Cir. 2005); see 42 U.S.C. § 1983. "In order to state a claim under § 1983, a plaintiff must allege that his constitutional rights were violated by someone acting under color of state law." Jerrytone v. Musto, 167 Fed. Appx. 295, 300 (3d Cir. 2006) (citing West v. Atkins, 487 U.S. 42, 48 (1988)). "Accordingly, '[t]he first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (quoting Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5 (1998))).

### 1.    The § 1983/First Amendment Claim

"A public employee has a constitutional right to speak on matters of public concern without fear of retaliation." Baldassare v. New Jersey, 250 F.3d 188, 194 (3d Cir. 2001). But, a public employee's right of expression is not absolute. Azzaro v. County of Allegheny, 110 F.3d 968, 976 (3d Cir. 1997). Courts use a three step analysis to determine whether a public employee's First Amendment right has been violated by employer retaliation. Brennan v. Norton, 350 F.3d 399, 412 (3d Cir. 2003). First, the public employee "must establish the activity

8

in question was protected" or, in other words, that the speech involved a matter of "public concern." Baldassare, 250 F.3d at 195.  Second, the public employee "must demonstrate his interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees." Id.  Third, plaintiff "must show the protected activity was a substantial or motivating factor in the alleged retaliatory action." Id.  Finally, a public employer rebuts the claim by demonstrating that, in the absence of the protected conduct, it would have reached the same decision.  Id.

### a.      The First and Second Prongs

Defendants Orange and OPD concede that "testifying at a criminal trial is protected speech." (Defs. Orange and OPD's Sum. Judg. Brief at 4).  Defendants do not contest that Plaintiff's interest in the testimony outweighs any countervailing interests Defendants might have.  Thus, the first and second prongs of the test are satisfied.

### b.      The Third Prong

The crux of the argument centers around the third prong – whether the retaliation was "substantially motivated" by Plaintiff's testimony.  The third prong presents a question for the fact finder.  Baldassare, 250 F.3d at 195; Green v. Phila. Hous. Auth., 105 F.3d 882, 885 (3d Cir. 1997) (recognizing that the second and third prongs of this analysis are questions for the fact finder).  At trial, Plaintiff shall have the burden of establishing the third prong.  Thus, Defendants must show that there is an absence of evidence to support Plaintiff's allegations under this prong. Defendants fail to do so.

### c.      The City of Orange and the Orange Police Department

As stated above, Plaintiff alleges several acts of retaliation taken by members of the OPD.

Orange and OPD cannot, however, be subject to liability on a theory of respondeat superior. Monell v. Department of Social Services, 436 U.S. 658, 691 (1978). Therefore, Orange and OPD may be held liable only for the actions of their employees if those employees commit unlawful or unconstitutional acts pursuant to a "policy or custom" of the public entity. Id. at 694.

A plaintiff may demonstrate municipal liability for a constitutional violation in one of three ways. First, a plaintiff may show that a person or entity with decision-making authority expressly authorized or enacted an unconstitutional policy or order. See Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986) (holding that municipal liability may be imposed for a single decision by policymakers of the municipality). Second, a plaintiff may prove that his injury was caused by a municipal custom – a practice "so permanent and settled" as to constitute a "custom or usage." Monell, 436 U.S. at 691. Last, a municipal entity may be liable for a policy of inaction where the inaction amounts to a failure to protect constitutional rights. See Canton v. Harris, 489 U.S. 378, 388-89 (1989).

Under the second option, Plaintiff presents evidence of the so-called "blue wall of silence" – the unspoken rule among police officers to never testify against other police officers. Plaintiff argues that the retaliation that results from violating this unspoken rule is a "custom or usage" of the Orange Police Department. Tortorella testified that he was advised by Lieutenant Smith, one of the defendants in the Smith Trial, to keep quiet. (Tortorella Dep. attached as Ex. B to the Nulty Cert., T22:8-14). In addition to his own testimony that the "blue wall" is "unwritten law" (Tortorella Dep. attached as Ex. B to the Nulty Cert., T261:13 to 262:7), three of the four Individual Defendants testified to its existence. While not admitting that they subscribed personally to the unwritten policy, the Individual Defendants acquiesced to its existence in the

10

OPD.  (Dep. Tr. of Edward Lucas ("Lucas Dep.") attached as Ex. I to the Nulty Cert., T49:2-12;

Dep. Tr. of William Heinzelman, dated October 7, 2005, attached as Ex. C to the Nulty Cert.,

T39:3-23; Sweigart Dep., attached as Ex. D to the Nulty Cert., T48:21-43, 49:5-19; Wactor Dep.,

attached as Ex. E to the Nulty Cert., T49:15 to 50:16, 50:22-51:7).

　　　　Plaintiff's partner, Officer Jackson, implicitly acknowledged the existence of the "blue

wall" in his testimony at the Smith trial, stating "I didn't want to have to testify against fellow

officers . . . people look down on that when cops testify against cops."  (Transcript of

Proceedings of U.S. v. Smith, et al., attached as Ex. F of the Nulty Cert.).  Further, the Individual

Defendants testified that Plaintiff's cooperation in the Smith Trial was well known (Wactor Dep.,

attached as Ex. E to the Nulty Cert., T90:16-20 to 92:3) and created unhappiness in the Orange

Police Department.  (Sweigart Dep., attached as Ex. D to the Nulty Cert., T44:6 to 45:21; Lucas

Dep., attached as Ex. I to the Nulty Cert., T49:2-12).

　　　　Plaintiff supplements his evidence regarding the existence of the "blue wall" with

evidence that officers who violated the unspoken policy would face retaliation.  Sweigart and

Wactor acknowledged that the cheese incident warranted an investigation, but both failed to take

any steps to conduct such an investigation.  (Sweigart Dep., attached as Ex. D to the Nulty Cert.,

T111:16-24; Wactor Dep., attached as Ex. E to the Nulty Cert., T103:7 to 104:24).  Similarly,

Sweigart, Heinzelman, and Wactor acknowledged that the mutilation of Jackson's uniforms

warranted investigation, yet failed to investigate.  (Sweigart Dep., attached as Ex. D to the Nulty

Cert., T112:14 to 113:24, T115:1-4; Heinzelman Dep., attached as Ex. C to the Nulty Cert.,

T224:23 to 226:17; Wactor Dep., attached as Ex. E to the Nulty Cert., T104:25 to 106:13).

Director Lucas testified as to his knowledge of the threats by officers to not provide backup to

Officer Jackson.  Lucas did not investigate the threats.  (Lucas Dep., attached as Ex. I to the Nulty Cert., T53:14 to 55:3).

Plaintiff also provides evidence of the termination, departure, or retirement of six other officers involved in, but not charged as defendants in, the Smith Trial.  Director Wactor testified that Officer Christopher Marucci left OPD because Marucci believed he would be charged administratively.  (Wactor Dep., attached as Ex. E to the Nulty Cert., T107:3-7).  Wactor also testified that Officer Christopher Iandorio left OPD as a Sergeant to take a position with the Essex County Sheriff's Office as a patrolman, a lesser position.  (Wactor Dep., attached as Ex. E to the Nulty Cert., T110:6 to 112:9)  Officer Brian David ("David"), who initially arrested Donald Faison and testified as a government witness in the Smith Trial, filed a lawsuit against Orange, alleging retaliation.  David's settlement of that lawsuit included his retirement from OPD.  (Dep. Tr. of Marvin T. Braker, Esq. ("Braker Dep."), attached as Ex. K to the Nulty Cert., T190:2 to 191:18).  Lieutenant Michael Gannon retired five years before the age at which he would receive full retirement benefits because of fear of administrative proceedings against him.  (Sweigart Dep., attached as Ex. D to the Nulty Cert., T213:15 to 223:6).  Sergeant Guido Aguiar faced disciplinary charges for failure to testify to the Grand Jury in the Smith Trial.  Aguiar did testify at trial.  The charges against Aguiar were dropped after he left the force on disability.  (Lucas Dep., attached as Ex. I to the Nulty Cert., T136:21 to 137:9 ).  Officer Jackson was administratively charged and terminated for failure to testify truthfully initially to federal investigators.

Plaintiff argues that the departure of all of these officers who were involved in the Smith Trial further suggests a custom of retaliation against officers who violate the "blue wall."

12

Plaintiff offers further evidence of a policy of retaliation against officers who violate the "blue wall" code of silence.  Specifically, Plaintiff refers to the suppression of a letter from the Essex County Prosecutor's Office (the "ECPO").

On January 11, 2001, the ECPO began an investigation of allegations of criminal conduct against seventeen officers involved with – but not federally prosecuted in – the Faison matter, including Plaintiff.  (Ex. R to the Nulty Cert.).  On May 14, 2001, Assistant Prosecutor Prosper Bellizia ("Bellizia") met with Sweigart and Heinzelman and conveyed that he would likely recommend minor discipline or written reprimands for four officers, which they understood would include Plaintiff.  (Preliminary Notice of Disciplinary Action against Guido Aguiar, dated October 2, 2001, attached as Ex. N to the Nulty Cert.;Heinzelman Dep., attached as Ex. C to the Nulty Cert., 159:16-19).  Initial discovery suggested that no other events occurred regarding the investigation until August 21, 2001.  Discovery produced no other documents from Defendants between May 14, 2001 and August 21, 2001.

However, during discovery for this action, a subpoena to the ECPO produced a May 16, 2001 letter from Bellizia to Director Wactor which recommended no criminal charges, a written reprimand, and no more than a five day suspension for Plaintiff (the "May 16 Letter").  (May 16 Letter, attached as Ex. Z to the Nulty Cert.).  Importantly, the letter also signified to Wactor and OPD that the criminal investigation of Tortorella was complete.  (May 16 Letter, attached as Ex. Z to the Nulty Cert.).  The letter started the running of the statute of limitations for bringing charges against Tortorella.  See N.J. Stat. Ann. 40A:14-147) ("The 45-day limit shall begin on the day after the disposition of the criminal investigation.").

Plaintiff provides deposition testimony of Defendant Wactor which could lead a

13

reasonable fact finder to conclude that the letter was suppressed by Defendants Sweigart and Heinzelman.  Wactor testified that he received the letter and forwarded it to Sweigart.  However, Sweigart, Heinzelman, and Lucas denied knowledge of the letter prior to their depositions.  This evidence is significant because, if true, it would mean that Sweigart and Heinzelman (and possibly Wactor if he had failed to provide the letter to Lucas before he left) actively participated in the practice of retaliating against officers who violate the "blue wall" by suppressing evidence that would have assisted Plaintiff in his disciplinary hearing.

Defendants fail to show that there is no genuine issue as to a material fact to support Plaintiff's allegation that there exists a municipal "custom" of retaliating against officers who violate the "blue wall of silence."  Thus, the analysis proceeds to whether Defendants would have taken the same action absent the protected conduct.  Springer v. Henry, 435 F.3d 268, 275 (3d Cir. 2006).

### d.     Defendants Fail to Rebut

Defendants bear the burden of proof.  They must affirmatively show that a reasonable jury would find that Defendants would have taken the same action absent the protected conduct. Defendants argue that Plaintiff would have been terminated in any event because 1) Plaintiff admittedly lied to federal investigators, and 2) Plaintiff's poor disciplinary record.  (Defs. Orange and OPD's Sum. Judg. Br. 16).  Defendants' argument is not persuasive.

To rebut the explanation that he was fired because he lied to federal prosecutors, Plaintiff presents evidence that his partner, Officer Jackson, was terminated and subsequently reinstated (following a federal lawsuit and settlement) even though Jackson also lied to federal investigators before testifying truthfully.  (Opinion of Office of Administrative Law as to Officer Jackson,

dated January 29, 2003, attached as Ex. BB to the Nulty Cert.).  This fact alone is sufficient to

allow a reasonable jury to doubt whether Plaintiff would have been terminated absent his

testimony.  Jackson and Tortorella's factual scenarios differ only in that Jackson decided to

testify truthfully before Jackson.  This Court finds that difference insignificant in light of all of

the evidence presented.  In fact, Jackson's actions seem even more egregious because his

untruthful testimony was also presented to the Grand Jury.  Further, Plaintiffs' evidence

suggesting suppression of information regarding his disciplinary proceedings, i.e., the May 16

Letter, adds further doubt to whether Defendants would have terminated Tortorella absent his

testimony.  In light of this evidence, Defendant fails to meet its burden to rebut using this stated

reason.

   Plaintiff also provides evidence which calls into doubt Defendants Orange and OPD's

second proffered reason for the termination: Plaintiff's poor disciplinary record.  Plaintiff

provides evidence of other Orange police officers with similar records receiving less adverse

discipline than termination for their untruthful violations.  (Internal Investigation Memorandum

dated September 20, 2001, attached as Ex. CC to the Nulty Cert. and Lucas Dep., attached as Ex.

I to the Nulty Cert., T229:15 to 234:14 (reference to Officer Denise Banks who used a fraudulent

insurance card); Preliminary Notice of Disciplinary Action against Tisdale-Jackson dated

February 28, 2005, attached as Ex. DD to the Nulty Cert. and Lucas Dep., attached as Ex. I to the

Nulty Cert., T234:21 to 240:5 (reference to Sergeant Holmes, Officer Tisdale-Jackson, and

Officer Lane, who provided false information as to side jobs); Internal Affairs Complaint against

Eric Jackson dated November 28, 2001, attached as Ex. EE to the Nulty Cert., Lucas Dep.,

attached as Ex. I to the Nulty Cert., T213:11-215:2 (references to Officer Eric Davis, who was

disciplined multiple times for failing to provide truthful information).

In addition to these examples, the evidence presented regarding the "blue wall" and the possible suppression of the May 16 Letter again casts significant doubt on the alleged "legitimate" reason for Tortorella's termination. Defendants have failed to show sufficient evidence to infer that a reasonable jury would find that Defendants would have terminated Plaintiff absent his testimony in the Smith Trial.

Plaintiff establishes that there are genuine issues as to material facts regarding his discrimination claim under 42 U.S.C. § 1983. Accordingly, summary judgment as to Orange and the Orange Police Department under Plaintiff's claim for retaliation under 42 U.S.C. § 1983 is denied.

e.    The Individual Defendants

Plaintiff contends that the Individual Defendants are also liable for the retaliatory acts taken against him. This Court agrees as to Defendants Sweigart and Wactor, but disagrees as to Defendants Lucas and Heinzelman. The liability of a defendant in a civil rights action cannot be predicated only on the theory of respondeat superior. Monell, 436 U.S. at 691. A plaintiff in a civil rights action must show personal involvement by alleging personal direction or actual knowledge and acquiescence. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

Plaintiff here demonstrates through his deposition testimony, and that of the Individual Defendants, that the Individual Defendants had knowledge of the retaliatory acts and acquiesced to those acts. Sweigart and Wactor each had knowledge of the cheese incident, an act of

16

retaliation, but failed to take any action.[4]

Most significantly, Plaintiff provides evidence from which a reasonable fact finder could find that Defendants Wactor and Sweigart had knowledge of the May 16 Letter and failed to provide that letter to Plaintiff for his disciplinary hearing.  Wactor acknowledges contemporaneous receipt of the letter and testified to passing the letter on to Sweigart.  Sweigart denies seeing the letter prior to discovery in this case.  If Wactor is correct, then Sweigart had the letter, but suppressed its contents.

Further, it is highly unlikely that Sweigart was unaware of the letter, as he was the lead investigator for internal affairs in the matter.  Orange City Attorney Braker ("Braker") testified that he had not seen the letter before this action, but that such information is usually provided to him.  (Braker Dep., attached as Ex. K to the Nulty Cert., T81:8-20).  Director Lucas also testified that he was not provided the letter when he became director, despite inheriting Wactor's files.  (Lucas Dep., attached as Ex. I to the Nulty Cert., T100:10 to 101:6).  The absence of the letter in the disciplinary proceedings and the failure of Defendants Wactor and Sweigart to produce the letter in discovery in this case is sufficient to implicate each of them in the letter's suppression.

Plaintiff fails to present evidence that Defendants Heinzelman and Lucas actively participated in any retaliatory acts against Plaintiff.  Nor has Plaintiff demonstrated that Heinzelman and Lucas had knowledge of, and acquiesced to, retaliatory acts.  Plaintiff showed that Heinzelman and Lucas had knowledge of acts taken against Officer Jackson, but Officer Jackson is not a plaintiff in this case.  Plaintiff also does provide adequate evidence implicating

---

[4] There is no evidence or allegation of personal direction to commit this act by the Individual Defendants.

Heinzelman and Lucas in the suppression of the May 16 Letter.  No genuine issues as to any material facts are presented for this Court's consideration.  Summary judgment as to Defendants Heinzelman and Lucas regarding Plaintiff's § 1983 claims pertaining to his First Amendment rights is granted.

f.      Qualified Immunity

This Court further holds that Wactor and Sweigart are not entitled to qualified immunity on Plaintiff's First Amendment claim.  "The doctrine of qualified immunity shields government officials from civil liability 'as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The civil rights defendant must be put on notice that the conduct is constitutionally prohibited by sufficient precedent.  McKee v. Hart, 436 F.3d 165, 171 (3d Cir. 2006).

In 1988, thirteen years before these events took place, the Third Circuit recognized that the law was "clearly established" in 1982 that a public employee could not be demoted, much less terminated, in retaliation for exercising first amendment rights.  Zamboni v. Stamler, 847 F.2d 73, 80 n. 7 (1988).  Any reasonable official in Wactor or Sweigart's position would understand that retaliating against Plaintiff for his participation in the Smith Trial would violate Plaintiff's First Amendment rights.  Thus, this Court denies summary judgment as to the First Amendment claims against Defendants Wactor and Sweigart.

2.      *The § 1983/Fourteenth Amendment Claim*

In their motion for summary judgment, Defendants construe the Complaint to allege a claim for violation of the Fourteenth Amendment prohibition against deprivation of a property

18

interest without due process of law, based on Plaintiff's termination without providing adequate notice.  Plaintiff's opposition brief confirms this interpretation of the Complaint.  Defendants' sole argument as to Plaintiffs' Fourteenth Amendment claim is that Plaintiff misconstrues the applicable statute of limitations.  This Court disagrees with Defendants' assessment.

Specifically, Plaintiff argues that he was deprived of his employment despite the expiration of the effective statute of limitations – the "45 day rule" – prior to his being charged.  N.J. Stat. Ann. 40A:14-147.  N.J. Stat. Ann. 40A:14-147 provides:

> A complaint charging a violation of the internal rules and regulations established for the conduct of a law enforcement unit shall be filed no later than the 45th day after the date on which the person filing the complaint obtained sufficient information . . . .  The 45-day time limit shall not apply if an investigation of a law enforcement officer for a violation of the internal rules or regulations of the law enforcement unit is included directly or indirectly within a concurrent investigation of that officer for a violation of the criminal laws of this State.  **The 45-day limit shall begin on the day after the disposition of the criminal investigation.**

(emphasis added).

Neither party disputes the existence of an ongoing criminal investigation by the Essex County Prosecutor's Office.  Further, Plaintiff provides clear evidence, in the May 16, 2001 letter, of the "disposition of the criminal investigation."  The May 16, 2001 letter from Assistant Prosecutor Bellizia to Police Director Wactor states, "[a]s you are aware, the Attorney General's Office has declined to pursue criminal charges against [Anthony Tortorella]."[5]  Defendants

---

[5] Plaintiff was not provided with a copy of the May 16, 2001 letter prior to his hearing.  Further, Police Director Wactor acknowledged contemporaneous receipt of the letter.  Nevertheless, Orange and OPD proceeded with the disciplinary proceedings against Tortorella.  Incredibly, Defendants do not dispute this version of the facts.  The import of this letter, and its unexplained absence during Plaintiff's hearing, is clear.  The situation comes close to warranting a sua sponte grant of judgment on the pleadings for this claim.  However, all the elements of this

Orange and OPD ignore the emphasized language of N.J. Stat. Ann. 40A:14-147 and argue that

the 45-day period begins to run when Captain Sweigart received transcripts and documents

regarding the Smith trial.  This interpretation is resoundingly incorrect.  See Aristizibal v. City of

Atlantic City, 380 N.J. Super. 405, 428 (Law Div. 2005) (holding that, where an officer is

concurrently under investigation for violation of criminal laws, the 45-day time limit commences

on the day after the disposition of the criminal investigation); Grubb v. Borough of Hightstown,

331 N.J. Super. 398, 408 (Law Div. 2000) (holding that the 45-day time limit begins on the day

after the disposition of the criminal investigation even where the two investigations do not occur

simultaneously), aff'd 353 N.J. Super. 333 (App. Div. 2002).  As such, Defendants Orange and

OPD's motion for summary judgment as to Plaintiffs' Fourteenth Amendment due process

claims are denied.  The application of the 45-day rule is not a plausible basis under law to bar

plaintiffs' claim.

     D.     <u>Count Four - Conscientious Employee Protection Act Claim</u>

In Count Four, Plaintiff contends that his termination violated the Conscientious

Employee Protection Act ("CEPA"), N.J. Stat. Ann. 34:19-1 et seq.  Plaintiff seeks relief as to all

Defendants.  This Court denies all motions for summary judgment on this claim, except those

motions made by Defendants Wactor and Heinzelman.

CEPA was enacted to "protect employees who report illegal or unethical work-place

activities." Barratt v. Cushman & Wakefield of New Jersey, Inc., 144 N.J. 120, 127 (1996).  "As

remedial legislation, CEPA must be 'construed liberally to effectuate its important social goal.'"

---

claim were not fully briefed by the parties.  Thus, this Court simply denies the motion for
summary judgment.

Feldman v. Hunterdon Radiological Associates, 187 N.J. 228, 239 (2006) (quoting Higgins v.

Pascack Valley Hospital, 158 N.J. 404, 424 (1999) and Abbamont v. Piscataway Twp. Bd. of

Educ., 138 N.J. 405, 431 (1994)).

A plaintiff in an action pursuant to N.J. Stat. Ann. 34:19-3c must demonstrate that:

> (1) he or she reasonably believed that his or her employer's conduct
> was violating either a law, rule, or regulation promulgated pursuant
> to law, or a clear mandate of public policy; (2) he or she performed
> a "whistle-blowing" activity described in N.J. Stat. Ann. 34:19-3c; (3)
> an adverse employment action was taken against him or her; and (4)
> a causal connection exists between the whistle-blowing activity and
> the adverse employment action.

Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003).

### 1.    The Individual Defendants

It is undisputed between the parties that Plaintiff had a reasonable belief that the conduct

of the Orange police officers involved in the arrest and detention of Donald Faison violated any

number of laws.  It is clear to this Court that Plaintiff sets forth sufficient facts that support an

objectively reasonable belief that, at the very least, Orange police officers violated a strong public

policy on the night of Donald Faison's death.  See Dzwonar v. McDevitt, 177 N.J. at 464 (The

New Jersey Supreme Court held that CEPA "does not require a plaintiff to show that a law, rule,

regulation or clear mandate of public policy actually would be violated if all the facts he or she

alleges are true," but, instead, requires plaintiff to set forth facts that support an objectively

reasonable belief that a violation occurred.).

This Court also finds that Plaintiff performed a "whistleblowing activity."  N.J. Stat. Ann.

34:19-3 states that "an employer shall not take any retaliatory action against an employee because

the employee . . . [d]iscloses . . . to a pubic body" a violation by the employer.  N.J. Stat. Ann.

34:19-3.  CEPA defines "public body" to include "any federal, State, or local judiciary, or any member or employee thereof."  N.J. Stat. Ann. 34:19-2(c).  Plaintiff's testimony to the Grand Jury in the Smith Trial falls under the statutory definition.

Plaintiff also demonstrates that an adverse employment action has been taken against him.  CEPA defines retaliatory action as "the discharge, suspension or demotion of an employee . . . ."  N.J. Stat. Ann. 34:19-2e.  Plaintiff's termination falls under the statutory definition of retaliatory action.

As was true in Plaintiff's § 1983 claims, the crux of the dispute here centers around the final prong – that "a causal connection exists between the whistleblowing activity and the adverse employment action."  Kolb v. Burns, 320 N.J. Super. 467, 476 (App. Div. 1999).  "It is . . . plain that the methods of proof and the applicable burdens in . . . CEPA cases generally follow Title VII law, and we therefore frequently look to federal as well as state discrimination and retaliation cases as precedent."  Donofry v. Autotote Systems, Inc., 350 N.J. Super. 276 (App. Div. 2001).  A CEPA plaintiff can prove causation in one of two ways: (1) direct evidence of retaliation under the "mixed-motive" theory or (2) circumstantial evidence that justifies an inference of retaliation under the "pretext" theory.  Fleming v. Correctional Healthcare Solutions, Inc., 164 N.J. 90, 100 (2000).

Under the "mixed-motive" theory, the employee "must produce direct evidence of discrimination."  Id.  Once that evidence is produced, the employer must then produce "evidence sufficient to show that it would have made the same decision if illegal bias had played no role in the employment decision."  Id.  The analysis ends under the "mixed-motive" analysis with the employer's affirmative defense on the question of cause in fact.

Under the "pretext" theory, the burden shifts to the employer once a prima facie case is made by the employee.  Id.  The employer must "articulate a legitimate, nondiscriminatory reason for the adverse employment decision."  Id.  Once the employer produces this evidence, the burden shifts back to the employee who must demonstrate that the employer's explanation is not credible.  Id.  "At all times the burden of proof or risk of non-persuasion, including the burden of proving "but for" causation or causation in fact, remains on the employee."  Id.

This Court finds that the Plaintiff presents a prima facie case under the "pretext" theory. Although the test to determine this prong under CEPA is slightly different, we hold that the same evidence which satisfies the final prong of Plaintiff's 42 U.S.C. § 1983 claim, also satisfies his CEPA claim.  See supra pp. 6-9 (including, inter alia, Plaintiff's evidence regarding the "blue wall," the cheese incident, other involved officers, and evidence regarding the possible suppression of the May 16 letter).  As stated above, this Court finds evidence to support Plaintiff's claims as to the Defendants Wactor and Sweigart – not Lucas and Heinzelman.

The burden of production then shifts to the employer to articulate a "legitimate, nondiscriminatory reason for the adverse employment decision."  Fleming, 164 N.J. at 100.  The employer must prove, by a preponderance of the evidence, that the adverse action would have taken place irrespective of the constitutionally protected action.  Erickson v. Marsh & McLennan Company, 117 N.J. 539, 554 (1990).

Wactor and Sweigart satisfy this standard.  Defendants argue that Plaintiff's prior discipline record and his initial failure to testify truthfully to federal authorities justify his termination regardless of his testimony to the Grand Jury.  (Undated Letter from Orange Police Department, attached as Ex. 1 to the Orange Br.; Opinion of Disciplinary Hearing of Anthony

Tortorella, dated February 24, 2004, attached as Ex. 20 of Defs.' Orange and OPD's Summ. J. Br.).  Therefore, the burden again shifts to Tortorella to demonstrate that Defendants' explanation is not credible.

In order to survive summary judgment once the burden has shifted back to the employee, the employee must, "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact[ ]finder <u>could</u> rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" <u>Kolb v. Burns</u>, 320 N.J. Super. 467 (App. Div. 1999) (citing <u>Fuentes v. Perskie</u>, 32 F.3d 759, 765 (3d Cir. 1994)).  Again, we find that Plaintiff satisfies this burden through the evidence set forth in this Court's discussion of Plaintiff's § 1983 claims.  <u>See</u> <u>supra</u> pp. 9-10 (including, <u>inter</u> <u>alia</u>, (1) evidence of Jackson's reinstatement to counter the argument that Plaintiff was terminated because of his failure to testify truthfully initially to federal investigators; (2) evidence of other similarly situated officers receiving less harsh punishments for acts of untruthfulness to counter Defendants' argument that Plaintiff's disciplinary record justified his firing; and (3) evidence of possible suppression of the May 16 Letter to rebut both justifications).

Plaintiff provides sufficient evidence to demonstrate that Wactor and Sweigart's proffered legitimate reasons are "unworthy of credence."  Therefore, the summary judgment motions of Defendants Wactor and Sweigart are denied as to Count Seven's CEPA claims.  The summary judgment motions of Defendants Lucas and Heinzelman are granted.

2.      *Defendants Orange and OPD*

Plaintiff also asserts CEPA claims against Defendants Orange and OPD.  Unlike

Plaintiff's claims under § 1983, the claims against Orange and OPD under CEPA are subject to a respondeat superior theory.  Reilly v. City of Atlantic City, 427 F. Supp. 2d 507, 524-25 (D.N.J. 2006) (citing Sunkett v. Misci, 183 F. Supp. 2d 691, 716 (D.N.J. 2002) and Abbamont v. Piscataway Twp. Bd. of Ed., 138 N.J. 405, 420-21 (1994)).

Plaintiff has demonstrated genuine issues as to material facts as to Defendants Wactor and Sweigart.  Therefore, Plaintiff has also demonstrated genuine issues as to material facts as to Wactor and Sweigart's employers, Orange and OPD.  Thus, this Court denies the motions for summary judgment of Defendants Orange and OPD.

## CONCLUSION

Plaintiff has withdrawn Counts Two, Four, and Five as to all Defendants.  Thus, Defendants' motions for summary judgment as to these Counts are denied as moot.

As to Counts One, Three, and Seven, Defendants Heinzelman and Lucas have demonstrated that "there is no genuine issue as to any material fact and that [they are] entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  Judgment is entered in favor of Defendants Heinzelman and Lucas on all counts of the Complaint.

Defendants Orange, OPD, Wactor and Sweigart have failed to demonstrate that "there is no genuine issue as to any material fact and that [they are] entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c) on Counts One, Three, and Seven.  Summary judgment is denied for Defendants Orange, OPD, Wactor and Sweigart as to Counts One, Three, and Seven.

   S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: January 16, 2007